UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


UNITED STATES OF AMERICA,            )
                                     )
                    Plaintiff        )
                                     )  No. 1:22-cr-10094-NMG-1
vs.                                  )
                                     )
JOSEPH PONZO,                        )
CHRISTOPHER PONZO,                   )
                                     )
                    Defendants.      )
                                     )
                                     )


BEFORE THE HONORABLE NATHANIEL M. GORTON
UNITED STATES DISTRICT JUDGE
Rule 11 Hearing


John Joseph Moakley United States Courthouse
Courtroom No. 4
One Courthouse Way
Boston, Massachusetts 02210


November 6, 2024
2:34 p.m.


Kristin M. Kelley, RPR, CRR
Official Court Reporter
John Joseph Moakley United States Courthouse
One Courthouse Way, Room 3209
Boston, Massachusetts 02210
E-mail: kmob929@gmail.com

Mechanical Steno - Computer-Aided Transcript

APPEARANCES:


        Lauren Maynard
        Dustin Chao
        United States Attorney's Office MA
        1 Courthouse Way
        Suite 9200
        Boston, MA 02210
        617-748-3227
        lauren.maynard@usdoj.gov
        dustin.chao@usdoj.gov
        for Plaintiff.



        Michael J. Connolly
        Hinckley, Allen and Snyder, LLP
        28 State Street
        Boston, MA 02109
        617-345-9000 ext.4598
        mconnolly@hinckleyallen.com
        for Joseph Ponzo.



        Christian G. Kiely
        Howard M. Cooper
        Max D. Stern
        Todd & Weld
        One Federal Street
        27th Floor
        Boston, MA 02110
        617-624-4729
        ckiely@toddweld.com
        hcooper@toddweld.com
        mdstern@toddweld.com
        for Christopher Ponzo.

P R O C E E D I N G S

THE CLERK:  All rise.

(The Honorable Court entered.)

THE CLERK:  Thank you.  You may be seated.  This is Criminal Action No. 22-10094, the United States of America versus Joseph Ponzo and Christopher Ponzo.

Would counsel please introduce themselves for the record.

MR. CHAO:  Good afternoon, your Honor.  Dustin Chao for the United States.

THE COURT:  Mr. Chao, good afternoon.

MS. MAYNARD:  Good afternoon, your Honor.  Lauren Maynard for the United States.

THE COURT:  Miss Maynard.

MR. STERN:  Good afternoon, your Honor.  Max Stern for Chris Ponzo.

THE COURT:  Mr. Stern.

MR. KIELY:  Good afternoon, your Honor.  Christian Kiely for Mr. Ponzo.

THE COURT:  Mr. Kiely.

MR. COOPER:  And Howard Cooper for Mr. Ponzo.

THE COURT:  Mr. Cooper.

MR. CONNOLLY:  Good afternoon, your Honor.  Michael Connolly for Joseph Ponzo.

THE COURT:  Mr. Connolly.

All right.  I understand, counsel, we're here to take changes of plea from your respective clients, is that correct?

MR. CONNOLLY:  Yes, your Honor.

THE COURT:  What I'm going to do is ask Mr. Connolly and his client, Joseph Ponzo, to take the witness stand, and I will allow Christopher Ponzo to stay at counsel table just so we'll have everybody closer at hand.  That's the way I'd like to proceed.

So Mr. Connolly and Mr. Joseph Ponzo will take the witness stand, please.  What we're going to do is we'll go through the process one at a time, but at some stages I will ask the question of both of the defendants and we'll proceed in that fashion.  All right?

If Mr. Joseph Ponzo would please stand.

JOSEPH PONZO, sworn.

THE COURT:  I will start with Mr. Joseph Ponzo.  Do you understand that you are under oath and if you answer any of my questions falsely, those answers may later be used against you in a prosecution for perjury or making a false statement?  Do you understand that?

DEFENDANT J. PONZO:  Yes, your Honor.

THE COURT:  Would you please state your full name for the record.

DEFENDANT J. PONZO:  Joseph Edward Ponzo.

THE COURT:  How old are you, Mr. Ponzo?

DEFENDANT J. PONZO:  51.

THE COURT:  What is your educational background?

DEFENDANT J. PONZO:  I have a master's degree, sir.

THE COURT:  From where?

DEFENDANT J. PONZO:  Western New England College.

THE COURT:  Have you ever been treated for any mental illness or addiction to narcotic drugs of any kind?

DEFENDANT J. PONZO:  No, your Honor.

THE COURT:  Are you presently under the influence of any drug, medication or alcoholic beverage of any kind?

DEFENDANT J. PONZO:  No, your Honor.

THE COURT:  I'm going to stop there and turn to Mr. Christopher Ponzo and ask you to stand and be sworn.

CHRISTOPHER PONZO, sworn.

THE CLERK:  Thank you.  You may be seated.

THE COURT:  Mr. Christopher Ponzo, you understand that you are now under oath and that if you answer any of my questions falsely, those answers may later be used against you in a prosecution for perjury or making a false statement?  Do you understand that?

DEFENDANT C. PONZO:  Yes, your Honor.

THE COURT:  Would you please state your full name for the record.

DEFENDANT C. PONZO:  Christopher Anthony Ponzo.

THE COURT:  What is your educational background?

DEFENDANT C. PONZO:  High school, Northeast Metropolitan Vocational.

THE COURT:  How old are you?

DEFENDANT C. PONZO:  50.

THE COURT:  Have you ever been treated for any mental illness or addiction to any narcotic drugs of any kind?

DEFENDANT C. PONZO:  No, your Honor.

THE COURT:  Are you currently under the influence of any drug, medication or alcoholic beverage of any kind?

DEFENDANT C. PONZO:  No, your Honor.

THE COURT:  All right.  Now I'm going to ask both of you the next question.  Then we'll ask for separate answers.

Have you both received copies of the Indictment pending against you, that is the written charges made against you in this case, and have you fully discussed those charges and the case in general with your respective attorneys, in your case, Mr. Joseph Ponzo, with Mr. Connolly and Mr. Christopher Ponzo with Messrs. Stern, Kiely and Cooper.

DEFENDANT J. PONZO:  Yes, your Honor.

DEFENDANT C. PONZO:  I have, your Honor, yes.

THE COURT:  And in your own words, Mr. Joseph Ponzo, what do you understand you are being charged with here this afternoon?

DEFENDANT J. PONZO:  Wire fraud, conspiracy to commit honest services wire fraud, aiding and assisting in filing

taxes.

THE COURT:  You're going to have to speak up so the court reporter can hear you.

DEFENDANT J. PONZO:  Sure.  False statements and aiding and assisting in filing false tax returns.

THE COURT:  Are you fully satisfied with the counsel, representation and advice given to you by Mr. Connolly as your attorney?

DEFENDANT J. PONZO:  Yes, your Honor.

THE COURT:  I'll ask Mr. Christopher Ponzo.  What do you understand, in your own words, what you're being charged with here this afternoon?

DEFENDANT C. PONZO:  Yes, your Honor.

THE COURT:  What do you understand that you are being charged with?

DEFENDANT C. PONZO:  False statements and kickbacks to Eric Darlington and Peter Marra.

THE COURT:  And conspiracy to do that?

DEFENDANT C. PONZO:  Yes, your Honor.

THE COURT:  All right.  Are you fully satisfied with the counsel, representation and advice given to you by your attorneys here today?

DEFENDANT C. PONZO:  Yes, your Honor.

THE COURT:  All right.  Now, I understand there is no written plea agreement between the government and these

defendants, Mr. Chao, is that correct?

MR. CHAO:  Yes, your Honor.

THE COURT:  I'll ask first Mr. Joseph Ponzo.  Has anyone made any promise or assurance to you of any kind in an effort to make you plead guilty here this afternoon?

DEFENDANT J. PONZO:  No, your Honor.

THE COURT:  Has anyone forced you to plead guilty here this afternoon?

DEFENDANT J. PONZO:  No, your Honor.

THE COURT:  Christopher Ponzo, has anyone made any assurance of any kind in an effort to make you plead guilty here this afternoon?

DEFENDANT C. PONZO:  No, your Honor.

THE COURT:  Has anyone forced you to plead guilty here?

DEFENDANT C. PONZO:  No, your Honor.

THE COURT:  Now, both of you, do you understand that the offenses to which you are pleading guilty to are felonies and, if your pleas are accepted, you'll be judged guilty of those offenses and such adjudication may deprive you of valuable civil rights, such as the right to serve on a jury, the right to possess any kind of firearm, the right to hold any public office?  Do you understand that, Mr. Joseph Ponzo?

DEFENDANT J. PONZO:  Yes, your Honor.

THE COURT:  Mr. Christopher Ponzo?

DEFENDANT C. PONZO:  Yes, your Honor.

THE COURT:  Mr. Chao, will you please inform the defendants of the maximum possible penalties that they face with these charges and if there are any mandatory minimums.

MR. CHAO:  Your Honor, there are no mandatory minimums.

With respect to Counts One, which is conspiracy to commit honest services wire fraud, Counts Two to 25, which is honest services wire fraud and aiding and abetting such offenses, for Counts One through Counts 25, the maximum term of imprisonment is 20 years of incarceration.

The maximum fine is the greatest of either $250,000 or twice the amount of gross gain or twice the gross loss derived from the offense.  There may be restitution ordered mandatory under 18 United States Code 3663A.  There is forfeiture as set forth in the indictment on pages 42 and 43 of the Superseding Indictment.

With respect to offenses charged under Counts One through 25, there is a maximum term of supervised release of 3 years and a $100 special assessment for each crime.

With respect to Counts 26 through 29, which only apply to Mr. Joseph Ponzo, which are the crime of aiding and assisting false income tax returns, the maximum term of imprisonment is 3 years, the maximum fine is I believe $100,000, a maximum term of supervised release of 3 years and,

with respect to each count, there is a $100 special assessment.

With respect to Count 30, which charges Mr. Joseph Ponzo with false statements, and Count 31, which charges Mr. Christopher Ponzo with false statements, the maximum term of imprisonment is 5 years incarceration.  The maximum fine is up to $250,000.  The maximum term of supervised release is 1 year.  There also is a $100 special assessment for each count.

THE COURT:  All right.  Mr. Joseph Ponzo, do you understand the possible consequences of your plea here this afternoon?

DEFENDANT J. PONZO:  Yes, your Honor.

THE COURT:  Mr. Christopher Ponzo, do you understand the possible consequences of your plea here this afternoon?

DEFENDANT C. PONZO:  Yes, your Honor.

THE COURT:  As to both of you, under the Sentencing Reform Act of 1984, the United States Sentencing Commission issued guidelines for judges to follow when imposing sentences in criminal cases.  Have both of you discussed with your respective attorneys how those Sentencing Guidelines will apply in your specific case?  Mr. Joseph Ponzo?

DEFENDANT J. PONZO:  Yes, your Honor.

THE COURT:  Mr. Christopher Ponzo?

DEFENDANT C. PONZO:  Yes, your Honor.

THE COURT:  You understand that a decision of the

United States Supreme Court, rendered now 20 years ago perhaps, rendered the Sentencing Guidelines discretionary rather than mandatory, meaning that I have the discretion to sentence you anywhere in the range set forth in the statute governing the crime to which you plead guilty and that I am not required to sentence you in accordance or within the prescribed Sentencing Guidelines or even based upon the factors contained in those guidelines?  Do you understand that?  Mr. Joseph Ponzo?

DEFENDANT J. PONZO:  Yes, your Honor.

THE COURT:  Mr. Christopher Ponzo?

DEFENDANT C. PONZO:  Yes, your Honor.

THE COURT:  Do you also understand that the Court will not be able to determine what advisory guideline sentence applies in your specific cases until after the presentence report has been prepared for me by the Probation Office and both of you have had the opportunity to read those presentence reports?  Do you understand that?

DEFENDANT J. PONZO:  Yes, your Honor.

DEFENDANT C. PONZO:  Yes, your Honor.

THE COURT:  And you'd have the right to challenge the facts in those presentence reports.  Do you understand that, Mr. Joseph Ponzo?

DEFENDANT J. PONZO:  Yes, your Honor.

THE COURT:  Mr. Christopher Ponzo?

DEFENDANT C. PONZO:  Yes, your Honor.

THE COURT:  You also understand that, after it has been determined what the appropriate guideline is, the judge, in this case that means me, has the authority to impose a sentence that is more severe or less severe than those called for in the guidelines?  Do you understand that, Mr. Joseph Ponzo?

DEFENDANT J. PONZO:  Yes, your Honor.

THE COURT:  Mr. Christopher Ponzo?

DEFENDANT C. PONZO:  Yes, your Honor.

THE COURT:  You also understand that under some circumstances either you or the government may appeal to a higher court any sentence that I impose?  Do you understand that?

DEFENDANT J. PONZO:  Yes, your Honor.

DEFENDANT C. PONZO:  Yes, your Honor.

THE COURT:  Finally, do you understand that parole has been abolished, and that if you are sentenced to be imprisoned, you will not be released on parole?  Mr. Joseph Ponzo?

DEFENDANT J. PONZO:  Yes, your Honor.

THE COURT:  Mr. Christopher Ponzo?

DEFENDANT C. PONZO:  Yes, your Honor.

THE COURT:  To the both of you, do you both understand generally that you have a right to plead not guilty and to persist in that plea and you would then have the right to a trial by jury, during which you'd have the right to be

represented by lawyers in your defense, you'd have the right to see and hear all of the witnesses and have them cross-examined in your defense, you would have the right to decline to do so, unless you voluntarily agreed to do so, and you'd have the right to subpoenas or compulsory process to compel the appearance of witnesses to testify in your defense?  Do you understand that, Mr. Joseph Ponzo?

DEFENDANT J. PONZO:  Yes, your Honor.

THE COURT:  Mr. Christopher Ponzo?

DEFENDANT C. PONZO:  Yes, your Honor.

THE COURT:  Do you further understand that by entering a plea of guilty that there will be no trial and you will have waived or given up your right to a trial by jury as well as those other rights associated with such a trial that I just described?  Do you understand that, Joseph Ponzo?

DEFENDANT J. PONZO:  Yes, your Honor.

THE COURT:  Christopher Ponzo?

DEFENDANT C. PONZO:  Yes, your Honor.

THE COURT:  Mr. Chao, would you inform the defendants of what facts the government would prove if this matter went to trial.

MR. CHAO:  Yes, your Honor.

The government would be prepared to prove at trial that Mr. Joseph Ponzo was a principal of Air Tight Solutions, LLC, which was a Massachusetts company formed in December 2014,

involved in the business of the application of insulation products.  The sole owner and manager of Air Tight was Joseph Ponzo's wife, a full-time homemaker.  Joseph Ponzo's name was not on any Air Tight incorporation documents, and Joseph Ponzo did not have a Massachusetts license to perform home energy improvement contracting.  Neither Joseph Ponzo nor his wife had any prior experience in energy efficiency insulation work.

From 2015 to 2019, Air Tight received approximately $7.4 million in payments from a company called CLEAResult, which was referred to as "Company A" in the Superseding Indictment.

Joseph Ponzo's brother, Christopher Ponzo, was the owner of CAP Electric, Inc. and its predecessor company, Electrical Associates, LLC.  CAP Electric performed energy efficiency work.  From 2013 to 2022, CAP Electric and Electrical Associates received approximately $36 million in payments from CLEAResult.

CLEAResult is a Texas-based energy efficiency consulting company.

Now, the government would also prove aspects of the Mass Save program.  Massachusetts requires all consumers to pay an energy efficiency surcharge, which is collected in every monthly gas and electric bill.  Utility companies like National Grid and Eversource collect these surcharges, which amount to hundreds of millions of dollars each year, and use them to fund

energy efficiency programs and initiatives.  The umbrella brand for all of these energy efficiency programs is known as Mass Save.

Under the Mass Save program, all of these surcharges and energy efficiency funds were collected by the utility companies and distributed through what are called lead vendors. Lead vendors obtain contracts with consumers and select and oversee contractors to perform the energy efficiency work. CLEAResult was a lead vendor under the Mass Save program.

Now, the energy efficiency funds are used to pay the contractors for the work, and sometimes those funds covered the entire project, and sometimes the consumer had to pay a percentage of the invoice.

Now, with respect to the bribery and kickback scheme, the government would be prepared to prove the following:  That Eric Darlington, known as "Person A" in the Superseding Indictment, and Peter Marra, referred to -- I'm sorry. "Associate A" is Eric Darlington and Peter Marra is "Associate B".  They were both employed by CLEAResult as project managers. In that role, Mr. Darlington and Mr. Marra participated in the recommendation, the selection, and oversight of contractors, such as Joseph Ponzo and Christopher Ponzo.

As CLEAResult employees, Darlington and Marra each had a fiduciary duty to their employer, CLEAResult.  And pursuant to CLEAResult's policies, Darlington and Marra were prohibited

from accepting anything of value from contractors, such as Mr. Joseph Ponzo and Mr. Christopher Ponzo.

Now, beginning as early as 2013 and continuing through 2022, in the District of Massachusetts and elsewhere, Joseph Ponzo, Christopher Ponzo, and others agreed to defraud CLEAResult of its right to the honest and faithful services of Mr. Darlington and Mr. Marra, by paying bribes and kickbacks to Darlington and Marra.

In exchange for those payments, Darlington and Marra assisted in having CLEAResult select Air Tight as an approved contractor for Mass Save projects. They also assisted CAP Electric and Air Tight in obtaining CLEAResult Mass Save projects, and assisted Joseph Ponzo's company, Air Tight Solutions, and Christopher Ponzo's company, CAP Electric, with pricing, billing, invoicing and receiving payments from CLEAResult for their completed projects. This forms the basis of Count One, the conspiracy, in the Superseding Indictment.

Now, specifically, beginning in at least as 2013 and continuing through 2017, Christopher Ponzo paid Eric Darlington, that CLEAResult employee, approximately $1,000 in cash every week. Beginning in or about 2015, Joseph Ponzo and Christopher Ponzo paid Darlington additional cash payments of thousands of dollars, at times approximating $5,000 and $10,000 cash at a time, after Joe Ponzo created Air Tight. Christopher Ponzo and Joseph Ponzo also gave Darlington gift cards and fuel

cards.

In late 2014, Christopher Ponzo and Eric Darlington helped Christopher Ponzo create that company, Air Tight Solutions.  Joseph Ponzo and his wife performed little or no work for Air Tight Solutions.  Instead, Air Tight subcontracted all of the insulation work to an outside contractor.  Despite receiving approximately $7.4 million in payments from CLEAResult from 2015 to 2019, Air Tight reported only approximately $766,000 in contract labor costs.  Ponzo used some of those Air Tight proceeds to acquire a vacation home in Marco Island, Florida, which was valued at approximately $830,000.

Now, to cover Joseph Ponzo's share of the bribe and kickback payments to Messrs. Darlington and Marra, from 2016 to 2019 Air Tight paid Christopher Ponzo's company approximately $1.4 million dollars.

Now, to fund these cash bribe payments, the proof that would be introduced at trial is that Christopher Ponzo cashed at least CAP Electric checks at a Revere check-cashing business totalling at least approximately $371,000, incurring over $9,000 in check cashing fees.

Now, Christopher Ponzo also made other purchases for Eric Darlington.  This included a new laptop, a tractor costing over $25,000, bathroom fixtures of approximately $3,700, and thousands of dollars of outside lighting fixtures and free

electrical work at Mr. Darlington's home pursuant to the bribery scheme.

The Ponzo's and their co-conspirators also communicated to each other via email in furtherance of the scheme.  For example, on or about June 28th of 2017, Joseph Ponzo emailed Christopher Ponzo, stating "I just looked it up we billed it and paid Eric", meaning Eric Darlington, "for Northborough, Revere and Clinton on May 1".  Now this email communication was transmitted via interstate wire communication.  This forms the basis of Count 13 of the Superseding Indictment.

Now, in June 2017, Eric Darlington left CLEAResult, but the Ponzo's, both Joseph and Christopher, continued the scheme by paying a different CLEAResult employee.  That was Peter Marra.  They paid him in bribes and kickbacks, including thousands of dollars in cash, including at least $22,500 in cash kept by Mr. Marra in a cardboard box.  He was also given gift cards and fuel cards in exchange for Mr. Marra's preferential treatment, which includes assessing properties, creating cost estimates for CLEAResult projects, and providing CAP Electric and Air Tight Solutions advanced notice of inspections and audits, and assisting CAP Electric and Air Tight with pricing, billing, invoicing and receiving payments from CLEAResult.

As part of the scheme, around June of 2018, Peter

Marra asked Joseph Ponzo to hire Mr. Marra's daughter to work at Air Tight.  Joseph Ponzo did indeed hire Mr. Marra's daughter and paid her approximately $30 an hour for 8 hours of work.

CLEAResult did not know that Mr. Darlington and Mr. Marra were receiving bribes and kickbacks for their assistance to Joseph and Christopher Ponzo.

During the course of the bribery and kickback scheme, Joseph and Christopher Ponzo's companies received payments from CLEAResult.  As noted before, Air Tight received 7.4 million from 2015 to 2019, and Christopher Ponzo's company, CAP Electric, and its predecessor received $36 million from 2013 to 2022.

Now, each of the payments described in Counts 2 through 12 and Counts 14 through 25 of the Superseding Indictment, which detail those payments that Air Tight and CAP Electric respectively received from CLEAResult, were transmitted by wire communications and interstate commerce.

Now, with respect to the evidence that would be introduced at trial for the aiding and abetting of false tax returns, this obviously relates to Mr. Joseph Ponzo only.  The evidence at trial would be that defendant Joseph Ponzo caused false tax returns to be filed that claimed false business expenses for his company, Air Tight Solutions.  For each tax year from 2015 to 2019, Joseph Ponzo and his wife filed an IRS

Form 1120S, which is a federal income tax return for so-called S Corporations.  Those tax returns reported Air Tight's ordinary business income.  Air Tight's income was then reported on Joseph Ponzo's personal IRS income tax return Form 1040.

Now, from 2015 through 2020, Joseph Ponzo told his accountants and tax preparers that all of the purchases on the Air Tight credit card and checking account were business expenses.  The accountants and tax preparers for Joseph Ponzo then categorized all those expenses and business expenses for tax purposes but, in reality, Joseph Ponzo was using Air Tight's credit card and checking account for personal, nonbusiness purchases.

In fact, from 2015 through 2019, Air Tight's credit and debit cards were used to make purchases of approximately $300,000 in gift cards from Home Depot, Lowe's and Staples.  Those gift cards were used for personal spending, which includes for groceries, restaurants, clothing, travel expenses, vacations and luxury goods.  The gift cards were largely spent at stores and restaurants in or near Stoneham, Massachusetts where Mr. Joseph Ponzo lived or either Gilford, New Hampshire, where Mr. Joseph Ponzo had a vacation home, and in Florida, where Joseph Ponzo at one time owned another vacation home.

Now, Joseph Ponzo's tax preparers and accountants only saw that the purchases were made at Home Depot, Lowe's and Staples.  They did not know that Joseph Ponzo was buying gift

cards.

Joseph Ponzo also misrepresented other personal expenses as business expenses.  For example, Mr. Joseph Ponzo told his accountant that a check written from Air Tight in 2015 was for energy efficient shower heads and aerators, when, in reality, it was for a synthetic turf to be installed at one of the properties for Mr. Joseph Ponzo.

Additionally, Joseph Ponzo told his accountant that a payment, which was actually made to a water sports supply store, was for foam insulation.  Instead, the payment was for the purchase of water sports accessories.

And, finally, in 2017, Joseph Ponzo told his accountant that a payment to a solar panel company was the replacement of a solar panel broken by an Air Tight employee, but, in reality, it was just to pay for a solar panel at Mr. Joseph Ponzo's personal home.

Now, by falsely representing all of these Air Tight purchases of gift cards and personal expenses as business expenses, Joseph Ponzo caused Air Tight's business expenses to be overstated, which then reduced Air Tight's reportable income on its Forms 1120S for tax years 2016, 2017, 2018 and 2019. This forms the basis of Counts 26 through 29 of the Superseding Indictment.

Now, finally, the charges underlying the false statements, the proof introduced at trial would be that, on

April 26th of 2022, Mr. Joseph Ponzo participated in a voluntary interview with agents with both the FBI and IRS. During that interview, Joseph Ponzo falsely stated that he had never given any money, gifts, or anything of value, to any CLEAResult employee, and that he had no knowledge of anyone else, including Christopher Ponzo, giving money or anything of value to any CLEAResult employees, including Mr. Darlington and Mr. Marra.  This forms the basis of Count 30 of the Superseding Information.

Finally, on or about April 27th of 2022, Christopher Ponzo participated in a voluntary interview with agents with the FBI and IRS.  During that interview, Christopher Ponzo falsely stated that he had never given any cash, gifts or anything of value to any CLEAResult employee, including Mr. Darlington and Mr. Marra.  This forms the basis of Count 31 of the Superseding Indictment.

THE COURT:  Mr. Joseph Ponzo, do you have anything to add to what Mr. Chao, Assistant United States Attorney Mr. Chao says the government would be able to prove if this matter were to go to trial?

DEFENDANT J. PONZO:  No, your Honor.

THE COURT:  Do you disagree with anything that he says the government would be able to prove?

DEFENDANT J. PONZO:  No, your Honor.

THE COURT:  Mr. Christopher Ponzo, do you have

anything to add to what Assistant United States Attorney Chao says the government would be able to prove if this matter were to go to trial?

DEFENDANT C. PONZO:  No, your Honor.

THE COURT:  Do you disagree with anything that he says the government would be able to prove?

DEFENDANT C. PONZO:  No, your Honor.

THE COURT:  That being the case, I would ask my Deputy Clerk to inquire of the defendants how they wish to plead. We'll start with Mr. Joseph Ponzo.  Will you please stand.

THE CLERK:  Mr. Joseph Ponzo, as to Count 1 of the 31 count Superseding Indictment, charging you with conspiracy to commit honest services wire fraud, in violation of Title 18 of the United States Code Section 1349, you have previously pled not guilty.  Do you now wish to change your plea?

DEFENDANT J. PONZO:  Yes.

THE CLERK:  What say you now as to Count 1s; guilty or not guilty?

DEFENDANT J. PONZO:  Guilty.

THE CLERK:  As to Counts 2 through 25 of the 31 count Superseding Indictment, charging you with honest services wire fraud, in violation of Title 18 of the United States Code Sections 1343 and 1346, you have previously pled not guilty. Do you now wish to change your plea?

DEFENDANT J. PONZO:  Yes.

THE CLERK:  What say you now as to Counts 2 through 25s; guilty or not guilty?

DEFENDANT J. PONZO:  Guilty.

THE CLERK:  As to Counts 26 through 29 of the 31 count Superseding Indictment, charging you with aiding and assisting in filing false tax returns, in violation of Title 26 of the United States Code Section 7206(2), you have previously pled not guilty.  Do you now wish to change your plea?

DEFENDANT J. PONZO:  Yes.

THE CLERK:  What say you now as to Counts 26 through 29; guilty or not guilty?

DEFENDANT J. PONZO:  Guilty.

THE CLERK:  As to Count 30 of the 31 count Superseding Indictment, charging you with false statements, in violation of Title 18 of the United States Code Section 1001(a)(2), you have previously pled not guilty.  Do you now wish to change your plea?

DEFENDANT J. PONZO:  Yes.

THE CLERK:  What say you now as to Count 30; guilty or not guilty?

DEFENDANT J. PONZO:  Guilty.

THE CLERK:  Thank you.  You may be seated.

THE COURT:  That being the case, it is the finding of the Court in the case of the United States versus Joseph Ponzo that the defendant is fully competent and capable of entering

an informed plea and that his plea of guilty is a knowing and voluntary plea, supported by an independent basis in fact, containing each of the essential elements of the offenses charged.  His plea is therefore accepted and he is now judged guilty of those offenses.

I would ask Mr. Christopher Ponzo to please stand.

THE CLERK:  Mr. Christopher Ponzo, as to Count 1 of the 31 count Superseding Indictment, charging you with conspiracy to commit honest services wire fraud, in violation of Title 18 of the United States Code Section 1349, you have previously pled not guilty.  Do you now wish to change your plea?

DEFENDANT C. PONZO:  Yes.

THE CLERK:  What say you now as to Count 1s; guilty or not guilty?

DEFENDANT C. PONZO:  Guilty.

THE CLERK:  As to Counts 2 through 25 of the 31 count Superseding Indictment, charging you with honest services wire fraud, in violation of Title 18 of the United States Code Sections 1343 and 1346, you have previously pled not guilty. Do you now wish to change your plea?

DEFENDANT C. PONZO:  Yes.

THE COURT:  What say you now as to Counts 2 through 25s; guilty or not guilty?

DEFENDANT C. PONZO:  Guilty.

THE CLERK:  As to Count 31 of the 31 count Superseding Indictment, charging you with false statements, in violation of Title 18 of the United States Code Section 1001(a)(2), you have previously pled not guilty.  Do you now wish to change your plea?

DEFENDANT C. PONZO:  Yes.

THE CLERK:  What say you now as to Count 31; guilty or not guilty?

DEFENDANT C. PONZO:  Guilty.

THE CLERK:  Thank you.  You may be seated.

THE COURT:  That being the case, it is the finding of the Court in the case of the United States versus Christopher Ponzo that the defendant is fully competent and capable of entering an informed plea and that his plea of guilty is a knowing and voluntary plea, supported by an independent basis in fact, containing each of the essential elements of the offenses charged.  His plea is therefore accepted and he is now judged guilty of those offenses.

Both defendants are hereby notified that a written presentence report will be prepared for me by the Probation Office.  You will both be asked to give information for that report and your attorneys may be present if you wish.  Both you and your attorneys will be given the opportunity to read that presentence report before the sentencing hearing.  At the sentencing hearing itself, you will both have a right to speak,

as well as your attorneys.

Do you understand that?  Mr. Joseph Ponzo?

DEFENDANT J. PONZO:  Yes, your Honor.

THE COURT:  Mr. Christopher Ponzo?

DEFENDANT C. PONZO:  Yes, your Honor.

THE COURT:  All right.  Then the sentencing for Mr. Joseph Ponzo will be on Wednesday, February 12, 2025, at 3:00 p.m.  Any known conflicts in that regard?  Mr. Connolly?

MR. CONNOLLY:  Your Honor, I believe I do.  If I could just have a minute.

THE COURT:  Yes.

MR. CONNOLLY:  I will be away that entire week on a previously scheduled vacation.

THE COURT:  Let's see if we can find a way around it.

THE CLERK:  We could do it the following week, Wednesday, the 19th at 3:00 p.m.

MR. CHAO:  I think that's school vacation week.

THE CLERK:  I'm sorry.  Yes.  Tuesday, the 25th of February at 3:00 p.m.

THE COURT:  Tuesday the 25th.  Any problem with that?

MR. CONNOLLY:  That's the first day of a 3-week trial I have starting in Suffolk Superior Court.  The entire previous week is school vacation.  How about the prior week?

THE COURT:  Let's see if they can shorten it up. Let's try the week before.

THE CLERK:  We might be able to do the 5th at 3:00 p.m.

THE COURT:  Wednesday, February 5th at 3:00 p.m.

MR. COOPER:  That works.

THE COURT:  Mr. Chao?

MR. CHAO:  Yes.

THE COURT:  It will be Wednesday, February 5th at 3:00 p.m. in this courtroom.  I take it the defendant is released on personal recognizance, is that correct?

MR. CHAO:  Yes, your Honor.

THE COURT:  Are there conditions of release that need to be renewed?

MR. CHAO:  Yes.  We would continue the same bail conditions.

THE COURT:  Do counsel and Mr. Joseph Ponzo understand the conditions of release that are currently in place?

MR. CONNOLLY:  Yes, your Honor.

DEFENDANT J. PONZO:  Yes, your Honor.

THE COURT:  You understand that those conditions continue to apply and violation of those conditions can result in punishment?  Do you understand that?

DEFENDANT J. PONZO:  Yes, your Honor.

THE COURT:  And failure to appear at the scheduled sentencing on Wednesday, February 5, 2025, at 3 p.m. in this courtroom is also a federal offense for which you can be

imprisoned.  Do you understand that?

DEFENDANT J. PONZO:  Yes, your Honor.

THE COURT:  Turning to Mr. Christopher Ponzo, I have Thursday, February 13, 2025, at 3:00 p.m.  Any known conflicts from counsel for Mr. Christopher Ponzo?

MR. STERN:  Would it be possible to do it on the same day as Joseph Ponzo?

THE COURT:  We're going to be on trial that week. It's not going to work.

MR. STERN:  There are overlapping issues so we thought there might be some saving of everything.

THE COURT:  Are they so connected that they cannot be sentenced on different days?

MR. STERN:  Of course they can be sentenced on different days.  We thought it would be better for everybody if we had to deal with -- there will be some legal issues having to do with the guidelines, for example.

THE COURT:  I'm not enamored of doing two sentencings back to back.  We're going to do them on two different days. You can pick that same week or find another week, but they're not going to be on the same day.

MR. STERN:  What about February 12th?

THE COURT:  Mr. Joseph is on February 5th.

MR. STERN:  I'm sorry.

MR. COOPER:  Can we go February 4th before Mr. Joseph

Ponzo?

MR. CHAO:  Your Honor, just to give you a heads up, I think this will be a very litigious exercise.  I believe loss amount will be very heavily litigated by the parties in this case, which I believe is what my fellow counsel are referring to.  I don't know whether they intend to call witnesses, but it may be, your Honor, that the government may, in fact, call a witness to further elaborate as to the proof that falls on us with respect to the loss amount.

MR. CONNOLLY:  Your Honor, Mr. Cooper is correct. That's why we think it makes sense to at least your Honor hear that evidence for both sentencings.  Whether they're on the same day or not, it will overlap.

THE COURT:  I'm not going to do them on the same day. I will do it the week of February 10th, some day that week.

THE CLERK:  That's when Mr. Connolly is away.

THE COURT:  You're on February 5th.

MR. CONNOLLY:  My client's sentencing is February 5th, correct, your Honor.

THE COURT:  So we're not concerned about your availability the following week, right?

MR. CONNOLLY:  No, but the point that counsel was making is that the same issues apply to both defendants that may require an evidentiary hearing.

THE COURT:  I'm not going to give you an evidentiary

hearing at sentencing.  We're going to resolve the problem on the papers.  No evidentiary hearings.

MR. CONNOLLY:  Can I speak to counsel?

THE COURT:  Yes, you may.

MR. STERN:  Could we go on the fourth of February?

THE COURT:  No.  We already have a conflict on that day.

MR. STERN:  Third?

THE COURT:  We're empaneling a jury, no.

MR. STERN:  February 6th, is that available?

THE COURT:  I'm going to schedule it in the week of February 10th.  In the meantime, if you can agree on dates that are compatible with the Court's schedule, I will change it. For now, we're going to schedule it at some point during the week of February 10th.  Give me a date, please, Christine.

THE CLERK:  I had indicated the 13th was the original date.

THE COURT:  February 13th at 3:00 p.m. in this courthouse.

So as of now, Mr. Joseph Ponzo will be Wednesday, February 5th at 3:00 p.m.  Christopher Ponzo will be Thursday, February 13th at 3:00 p.m.

I understand Mr. Christopher Ponzo is released on personal recognizance, is that correct?

MR. COOPER:  Yes.

THE COURT:  There are certain conditions upon which he has been released.  Are you familiar with those conditions, Mr. Christopher Ponzo and counsel?

DEFENDANT C. PONZO:  Yes, your Honor.

THE COURT:  Those conditions continue to apply.  If you violate any of them, that can result in punishment being administered.  If you fail to appear at the scheduled time for your sentencing, that is also a federal offense.  Do you understand that?

THE DEFENDANT C. PONZO:  Yes, your Honor.

THE COURT:  Is there any further business then to come before the Court in these proceedings?  First with respect to Mr. Joseph Ponzo.  Mr. Connolly?

MR. CONNOLLY:  No, your Honor.

THE COURT:  The government?

MR. CHAO:  Yes, your Honor.  I wanted to make sure, maybe you did this, I haven't been in your courtroom for a while, but inform both defendants they have the right to appeal any sentence that may be imposed.  I'm not sure your Honor covered that.

THE COURT:  I tell them that when they get sentenced. I don't tell them that when they plea.

Anything else with respect to the defendant Christopher Ponzo?

MR. COOPER:  No, your Honor.  Thank you.

THE COURT:  The government?

MR. CHAO:  No, your Honor.

THE COURT:  We're adjourned.

THE CLERK:  All rise.

(Adjourned, 3:17 P.M.)

C E R T I F I C A T E

UNITED STATES DISTRICT COURT )

DISTRICT OF MASSACHUSETTS    )

        I, Kristin M. Kelley, certify that the foregoing is a correct transcript from the record of proceedings taken November 6, 2024 in the above-entitled matter to the best of my skill and ability.


        /s/ Kristin M. Kelley                November 21, 2024

        Kristin M. Kelley, RPR, CRR              Date
        Official Court Reporter