UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

JOSEPH PONZO and
CHRISTOPHER PONZO,

          Defendants.

Case No. 22-cr-10094-NMG

### [PROPOSED] DEFENDANT'S RESPONSE TO NOTE 4
### OF THE GOVERNMENT'S SENTENCING MEMORANDUM

This is a response to the government's caustic attack on the sincerity of defendant's plea

tucked into a footnote of its Sentencing Memorandum.  Dkt 140 at 17, n.4.  Previously, the

government had not made any objection to crediting Chris Ponzo with having accepted

responsibility.  Indeed, the adjustment for doing so is even included in the government's own

guideline calculation.  Dkt 140, at 27.  Nevertheless, it now insinuates that because of what

defendant and his family told Probation, he and his brother are "attempting to rewrite the

defendants' narrative of their crimes and shirk responsibility."  Dkt 149 at 17, n.4.  In particular,

the government accuses him of falsely claiming that he brought in contracts on his own, that

there were fixed prices for the work, and that all of the money and gifts that he provided to

Darlington and Mara were "merely expressions of generosity."[1] The government states that all of

---

[1] "According to the defendants' narrative, they did not engage in a *quid pro quo* at all; instead, they brought in their own contracts, those contracts were priced just as they would have been for anyone else, and the regular payments and gifts to Darlington and Marra were merely expressions of generosity. *See* PSR ¶¶ 61a, 95, 103."

this is a "fabrication" because defendant has already conceded under oath at the plea hearing that

he "that he did not disagree with anything the government said it could prove." *Id.*

This argument is so misleading as to the law and so deceptive as to the facts, that it

should not be allowed to go without response.

In the first place, the government seems to contend that a plea to the crime of "honest

service fraud" necessarily and always means that the alleged victim has been harmed, or was

intended to be harmed, in a pecuniary sense.  Not so. In *Skilling v. United States*, 561 U.S. 358,

400–01 (2010), in upholding the honest services offense – literally a crime of fraud – the

Supreme Court explained the origin, legal foundation, and continued viability of the offense,

which is based on the theory of "intangible rights," as follows:

> The Fifth Circuit's opinion in *Shushan* [*v. United States* 117 F.2d 110 (1941)] stimulated the development of an "honest-services" doctrine. Unlike fraud in which the victim's loss of money or property supplied the defendant's gain, with one the mirror image of the other, see, *e.g., United States v. Starr,* 816 F.2d 94, 101 (C.A.2 1987), the honest-services theory targeted corruption that lacked similar symmetry. While the offender profited, the betrayed party suffered no deprivation of money or property; instead, a third party, who had not been deceived, provided the enrichment. *For example, if a city mayor (the offender) accepted a bribe from a third party in exchange for awarding that party a city contract, yet the contract terms were the same as any that could have been negotiated at arm's length, the city (the betrayed party) would suffer no tangible loss.* Cf. *McNally v. United States,* 483 U.S., 350, 360 (1987).  Even if the scheme occasioned a money or property *gain* for the betrayed party, courts reasoned, actionable harm lay in the denial of that party's right to the offender's "honest services." See, *e.g., United States v. Dixon,* 536 F.2d 1388, 1400 (C.A.2 1976)(emphasis added).

> "Most often these cases ... involved bribery of public officials," *United States v. Bohonus,* 628 F.2d 1167, 1171 (C.A.9 1980), but courts also recognized private-sector honest-services fraud. In perhaps the earliest application of the theory to private actors, a District Court, reviewing a bribery scheme, explained:

> **"When one tampers with [the employer-employee] relationship for the purpose of causing the employee to breach his duty [to his employer,] he in effect is defrauding the employer of a lawful right. The actual deception that is practiced is in the continued representation of the employee to the employer that**

2

*he is honest and loyal to the employer's interests."* United States v. Procter & Gamble Co., 47 F.Supp. 676, 678 (D.Mass.1942)(emphasis added).

In other words, the crux of the honest services offense is the deprivation of the employer's exclusive ability to permit and to guide what the employee does – whether or not the employer suffered any monetary loss. This is what the concept of *intangible right* means.  As in Justice Ginsberg's hypothetical in *Skilling*, *supra* at 400, in which the city actually lost nothing or even gained something from the bribery of the mayor, there would still be criminal liability for stealing the city's right to enjoy the unfettered loyalty of that public official.

Obviously, the government realized that a case based on pecuniary loss could not work here.  If this were not so, it would be alleging theft of money or property as well. In fact, it did exactly that in its original indictment, alleging honest services crimes and money or property offenses but deleted the latter when it became clear that a case based on property loss would not fit.[2]

---

[2] In the original indictment, in Count One the government charged that the defendants devised

> a scheme and artifice **to defraud and to obtain money and property**, to wit, Company A payments, by means of materially false and fraudulent pretenses, representations and promises, and to defraud and deprive Company A of **its right to the honest and faithful services** of its employee, the Associate, through bribes and kickbacks, to wit, a stream of benefits to include cash payments and other in-kind benefits[.]

Dkt 1 at p. 16 (emphasis added).

In its Superseding Indictment in Count One, the reference to "money and property' was deleted.  It now charges that the defendants devised

> a scheme and artifice to defraud by means of material false and fraudulent pretenses, representations and promises, and to defraud and deprive Company A of **its right to the honest and faithful services** of its employees, Associate A and Associate B, through bribes and kickbacks, to wit, a stream of benefits to include cash payments and other in-kind benefits[.]

Dkt 47, p.28 (emphasis added).

3

Moreover, the government ignores the fact that, as it argued in *United States v. McDonough*, 727 F.3d 143 (2013) and the First Circuit endorsed – there is no requirement that an honest services fraud must be shown to have only a single purpose. On the contrary, a dual intent is sufficient to prove honest services fraud. This is precisely what the defendant has admitted here – that he incentivized the project managers by rewarding them with money and gifts. In short, he both thanked for and paid for good service. Moreover, it is well settled that a pattern of payments – a "stream of benefits" – can support a bribery and kickback prosecution, s*ee United States v. McDonugh*, *supra*. at 154; *United States v. Gamin*, 510 F.3d 134, 149 (2d Cir. 2007)(Sotomayor, J.). Where there is such a "stream" it can be difficult even for the payor to sort out that which is a gratuity, that which is a kickback, and that which is a little of both. It is beyond ironic that the government is now twisting itself in knots to turn its own familiar arguments on their heads in order suggests that the defendant's admission of wrongdoing was disingenuous. The defendant's plea was honest and sincere and the reasonable thing to do given what he did and what he did not do.

Finally, it is undeniable that Chris Ponzo did in fact bring in work. He never denied that there were occasions -- although not many -- when Darlington and Marra sent work to him. Well over 90% of the jobs were originated by him. It is likewise indisputable that all the work he did involved fixed prices set by CLEAResult and there is no evidence that those prices were ever changed for him by either one of the project managers or by anyone else. And he has never claimed that all of the money or gifts he gave were "merely expressions of generosity." Nothing he said in the plea colloquy has contradicted by his sentencing arguments.

4

Respectfully submitted,

CHRISTOPHER PONZO,

By his attorneys,

*/s/ Max D. Stern*
Max D. Stern, BBO # 479560
Howard M. Cooper, BBO # 543842
Christian Kiely, BBO # 684308
TODD & WELD LLP
One Federal Street, 27th Floor
Boston, MA 02110
mdstern@toddweld.com
hcooper@toddweld.com
ckiely@toddweld.com
617-720-2626

Dated: February 4, 2025